### STEIN v. MENDETZ.

(Supreme Court, Appellate Division, First Department. April 24, 1908.)

MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—SUFFICIENCY OF EVIDENCE.
   Verdict for plaintiff for breach of contract, based on his alleged employment by defendant for a year, denied by defendant, *held* clearly against the great weight of evidence.

Appeal from Trial Term.

Action by Louis Stein against Phillip J. Mendetz for breach of contract of employment. From a judgment on a verdict for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Max D. Steuer (Wm. M. Seabury, of counsel), for appellant.

Jacob Manheim (Harry A. Gordon, on the brief), for respondent.

CLARKE, J. The complaint alleges that on or about the 19th day of November, 1906, the defendant, who was a manufacturer of ladies' cloaks and suits, promised and agreed to and with the plaintiff to take and continue the plaintiff in his employ as designer for the term of one year, commencing on said 19th day of November, 1906, and to pay $20 a week, and an additional sum equal to 5 per cent. of the net profits to be realized by the defendant during said term, which defendant guaranteed would not be less than $500; that the plaintiff agreed to and did enter the employ of the defendant in pursuance of said promise and agreement on or about the said 19th day of November, 1906, and continued in said employ up to the 26th day of November, 1906, when defendant wrongfully and without cause discharged him. The answer is a general denial. The plaintiff recovered a verdict for $1,242, being the difference between $20 a week for 51 weeks and the guaranty of $500, less the amount admitted to have been earned of $278. From the order denying the motion for a new trial, and from the judgment entered upon the verdict, the defendant appeals.

The plaintiff and the defendant are brothers-in-law. The plaintiff claims that he was an experienced designer in cloaks and suits. He testified that on Sunday evening, the 18th of November, 1906, the defendant and his father came to the plaintiff's house, No. 139 Second avenue, and had an interview at which the plaintiff's wife was also present; that the defendant said:

" 'Louis, I want you to come to work for me to-morrow. From to-morrow a year you shall work for me as a designer, and I will pay you $20 a week and 5 per cent. of the profit what I will make during the year.' And so, of course, I said: 'What will it amount to, the 5 per cent. of the profits which you will make during the year?' And he said: 'Louis, I guarantee you at least $500 for yourself, the profits what I will make during the year.' He said: 'It will make at least $30 a week.' * * * I said: 'I am satisfied with the terms, but I cannot get to-morrow to work,' I told him, 'first, because I did not give notice to the party I work for, * * * and, the second thing, I did not receive pay yet.' So he said: 'That is nothing. You can go to-morrow to work, to your boss, I mean, and explain that you are going to work for your brother-in-law, and he would not object.' "

Here were all the necessary elements of a contract of employment —the offer, the acceptance, the rate of wages, and the term; but being for a year and to commence at a future day, and not being in writing, it would have been void under the statute of frauds. The plaintiff further testified that on the next day, November 19, 1906, he saw the defendant and told him that he had given notice to his boss, that he was going to leave him, and that the defendant said:

" 'What did the boss say?' And I said: 'The boss asked me on what conditions I will make for my brother-in-law.' So I told him: 'I am going to get a salary and a percentage of the profit what he will make during the year.' "

That the defendant then said to him:

" 'Louis, go to work, of course, from to-day a year, as you work for me as designer, and I pay you $20 a week and 5 per cent. of the profit what I will make during the year, and that I will guarantee you $500 for your share of the profit what I will make during the year, and you will have at least $500, and this will make you at least $30 a week. * * * I said: 'All right.' I started to work."

This testimony at once suggests that, if the plaintiff's story is true that on the previous evening at his house all the terms of the employment had been discussed and agreed upon, no necessity existed for the repetition upon the following Monday of the precise details of every element of the contract in the same language as used on the former occasion. The inference is permissible that the plaintiff had become instructed in the law, and that it was the necessity of the statute which caused the minute recapitulation of the details agreed upon on the night before to be testified to as having been had upon this following morning, in the attempt to establish a contract, as then made, upon the beginning of the term, and hence not required to be in writing. Plaintiff further testified that at the end of that week he was paid, and on the following Monday morning he was discharged.

The defendant, the plaintiff's wife, and the defendant's father, the three people that plaintiff testified were present at the conversation on Sunday night, flatly contradict him. They say that a conversation

took place that night at the father's house, No. 138 Forsyth street; that in consequence of the importunities of the plaintiff, his parents, and his sister, the defendant promised to give him ·a chance to show what he could do as a designer, and told him to come on the following Tuesday for a trial; that nothing was said about wages, or a percentage of the profits, or the term of the employment. The defendant testified that he did come on Tuesday, that the plaintiff undertook · to design two patterns, that they were both unsatisfactory, that he remained but the one day, and that he was not paid anything for a week's service. Ginsberg, one of the defendant's employés, ·testified that the plaintiff came to the shop on Tuesday only, of his efforts to make patterns, and that the defendant, after these efforts, said: "You can look for another position."

The plaintiff's story is entirely uncorroborated. He called a former employer to prove that he was a designer. That witness testified that he never had been a designer for him, but had merely been an examiner, and the written recommendation put in evidence by the plaintiff and bearing date December 11, 1905, states:

"The bearer, M. L. Stein, was in our employ since August, 1905, as an examiner."

There is thus presented the uncorroborated story of the plaintiff, inherently improbable, as already pointed out, because of its repetition upon two successive days of each minute detail of the alleged agreement, flatly contradicted in all essential particulars by four witnesses, and in an important collateral matter by a fifth. It is obvious that the verdict was clearly against the great weight of evidence.

That being so, it follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.